We'll hear argument next in Case 10-680, Howes v. Fields. Mr. Bursch. Thank you, Mr. Chief Justice, and may it please the Court. This case raises two issues. The first is whether the right against self-incrimination requires that a prisoner always be Mirandized before being interviewed in isolation about conduct that occurred outside the prison. The second is an AEDPA question, whether this Court in Mathis clearly established such a per se rule. For three reasons, the answer to both questions is no. First, for nearly 50 years, this Court has declined to adopt any new per se rule that always requires a Miranda warning, instead considering all the circumstances. Lower Court. Don't you think being in custody itself is a circumstance? Sure, it's a circumstance. That goes into the all-the-circumstances mix. What's all this all-circumstances mix? I thought that our case law was fairly clear that all circumstances is a test for voluntariness. I thought the issue has always been, under Miranda, is the person free to go or not. That's correct. We agree it's a test. So since when have we imported the language of voluntariness into the Miranda test? And should we be creating yet another test? Justice Sotomayor, there are two separate tests. And I go back just to last term in the JCPOA. So go to the test of freedom to leave. Yes. If you're taken from your cell and locked into a room, and let's change the facts, and locked in a room and said, talk to me, tell me, you have to tell me what happened, is that person free to go? It would be much more difficult. But the test would be whether a reasonable person in the prisoner's position felt that they were free to go back to their cell in accord with reasonable, ordinary prison procedures. And that would be the test that's consistent with JDB. And I submit with every Miranda case that this Court has issued in the last 50 years. Sotomayor, what makes this case different? He's taken from a — except being told that he could leave. If he had been taken from his cell, removed from the prison, his normal setting, taken by armed guards to another building, and with guards at the door, sat down until, talk to us about this incident, why would he think he was free to leave? There is one fact I'm taking out of it, which is that he was told he was free to leave. There are a number of circumstances that kind of culminate in what I consider to be the two most important. Some of the background circumstances, he was in a room that was not locked. It was a conference room, not an interrogation room with a bright light. He was not shackled, he was not threatened, he was not physically harmed in any way. The two big ones are, one, that when he started to become belligerent, the guards told him that if you don't want to cooperate, then you'll have to go back to your cell, you'll have to leave. And that's the exact opposite of Miranda custody, where the guards are not allowed     he was free to leave, and when he was asked to leave, he declared he claims. Twice he said, I don't want to talk to you. And when he asked to leave at the end, it took 20 minutes and they continued the question. Doesn't that counter the rest of what you're saying? They are two factors that go into the mix, and I'll discuss each one in turn. When he says, I don't want to talk anymore, then he went on and kept talking. And you have to consider, well, why did he keep talking? Well, the record shows, I think if you're reading of it anyway, that he was trying to explain to the officers this timeline that he kept talking about. At the end, when it was a 20-minute delay, there is no contention that that was anyhow inconsistent with reasonable prison procedures. And the fact that it could have been 20 minutes, could have been 30 seconds, could have been an hour, depending on procedures, demonstrates why a per se rule doesn't make sense. We should look at all the circumstances. Ginsburg. Why is a per se rule necessarily what is being argued here? For one thing, he had no choice but to go with the police, right? That's correct. So it's different from some cases where the prisoner initiates the conversation. That is a little bit different. But the key facts here are, one, at the beginning, the questioning officers say, you're free to stop this and go back to your cell. Then in the middle, he gets belligerent, and they say, if you don't want to cooperate, you have to leave, you have to go back to your cell, which is, I submit, the opposite of Miranda custody. And then when he finally invokes his right to go back to his cell, it's immediately honored, with, of course, the 20-minute delay due to prison procedures. And so from beginning to end, a reasonable person in his position could have believed they were free to return, and that's all that Miranda requires. In fact, we have a trial court finding on that, on three of them, one, that he was told he was free to go, second, that he understood he was free to go, and third, that he was free to go, and that's all that matters. Ginsburg-Miller And it doesn't make any difference that they took him from his cell. He was under compulsion to leave with them, and interrogated during the hours when prisoners are ordinarily sleeping. Burschelger Again, I would submit those are all circumstances that should go into this all-the-circumstances consideration. You know, there were also other things that militated in favor of the trial court findings. Such as the explicit instruction that he was free to leave, that he would have to go back if he didn't cooperate, that they did honor his request to leave once made. So these are all the things that the Court should look at. And you can imagine a number of other situations, maybe with facts different than these, where a per se rule would be wholly inappropriate. You know, what if they had invited him to come down and he had the choice at the beginning? What if someone was stationed outside the door and took him immediately as soon as he said, I'm ready to go back? It just demonstrates that this isn't the place for a per se rule, that we should just follow the same Miranda test that's been applied for 50 years, and that's all the circumstances. Kagan General, when you say that, I took sometimes your brief and the U.S. Government's brief to be saying something more, which is that it's not all the circumstances, it's all the circumstances minus circumstances that are attendant upon normal prison living. So are you still arguing that, or are you really arguing an all-the-circumstances test? We're not taking quite that strong a position. We're arguing all the circumstances. And the analogy that I would draw is just like in the J.D.B. case last term, that you would consider not only the age of the suspect, but also the school environment. So I'm not saying the prison environment is taken out of the equation, just that it's not dispositive in and of itself, just like this Court held in Schatzer. So a court can still think, when it's doing an all-the-circumstances inquiry, it can still factor in something like, you know, it just was going to take him an hour to get back to his cell. That's still something that the Court can consider, along with everything else. Is that right? Not only can, but should, absolutely. And, you know, one of the benefits of having a per se or, I'm sorry, of having an all-the-circumstances rule rather than a per se rule is that it encourages truthful, voluntary confessions. And this Court has repeatedly recognized that such confessions are an unmitigated social good. That's something that we want. And you can imagine, again, that there are a variety of non-prison contexts where it would certainly be easier to have a per se rule. You could have done that in JDB. You know, it's so coercive to take an 8-year-old child to the principal's office with an officer and question him that per se there's always going to be some child version of the Miranda rule. But we don't do that. Or if you had someone in the hospital and they were in such a position that they were physically unable to leave, we don't have a hospital Miranda rule. There shouldn't be one in prisons, either. We should just take all the circumstances into account. And I think really the lesson of Schatzer is that we start, Justice Kagan, right where you did, that just simply being in prison, being interrogated or, I'm sorry, being in jail alone is not enough. But it's going to become one factor that we consider in this larger test. Roberts. Well, which way do you think that factor cuts? In this particular situation? Yes. I think it cuts in our favor as the trial court found, and the courts should defer to that, for all the reasons I just stated, that he was not threatened, not physically harmed, he was in a conference room, door wasn't locked. Of course, the big two, that when he got belligerent, they told him if you don't want to cooperate, you have to leave. The exact opposite of Miranda custody when you say if you don't cooperate, you will not be permitted to leave. And also that when he made the request to go, it was honored within the amount of time that they would have expected per prison policy. So it's not going to cut that. Except when they say you have to leave, one way to interpret that, or to analyze that, might be to say you're in custody no matter. Justice Kennedy, I don't think that's the case, because you have to leave, that's almost coercive of him to say, because he doesn't want him to go back to the cell. I don't think that's the case, because under Schatzer, there's nothing Miranda custodial about simply being in his cell. And if he wants to stay away from his cell, as it appears to here, because he was trying to explain himself, that's one of those factors that militates against a finding of murder. Kennedy, but I think it makes your case weaker, not stronger, that statement. I think it makes it stronger, because in the typical Miranda case, you would say to And here they were saying just the opposite. And the message they sent was consistent with the instructions they gave him at the beginning. If you tell us that you want to leave, we'll honor that request. And consistent with what actually happened at the end. He said, I want to go back, and they honored that request. And I think one of the other factors that you put in the mix here is that we were dealing with outside officers, not inside prison officers. These outside officers did not have the ability to impact his day-to-day prison life the way someone inside the prison would. Now, one other point I want to make about in and out of prison is this artificial line that the Sixth Circuit drew to cabin its per se rule. They said that if the conduct takes place outside the prison, per se, you get Miranda. If the conduct that they're questioning about was inside the prison walls, we're not going to do that. And the Sixth Circuit was forced to make that policy decision, because otherwise prison administration becomes very difficult. But under this Court's precedent and under the Fifth Amendment itself, there is nothing that would suggest that there should be a distinction in the Miranda analysis as to the locus of the conduct that is being questioned about. And it's possible to have a very serious in-prison crime, a murder of another inmate, and a very nominal outside crime, petty theft, and yet the Sixth Circuit would give pure Miranda protection to that petty theft questioning and no protection at all to the person who murdered someone inside the prison walls. And that just demonstrates where the Sixth Circuit rule starts to fall apart. Sotomayor, the Chief asked you in his question, which way does it cut? Meaning, you seem to be advocating a rule that says merely because he's in prison is irrelevant, standing alone. I think your adversary is saying you can't take out the fact that this person's liberty is restrained from the equation. So going back to my hypothetical, if you're forced to leave the prison, as this gentleman was, and put in another room, what presumption should you start with? Shouldn't the presumption be that if you're forced to go to another place, that you're in custody? Well, Justice Sotomayor, I'm going to start with the premise. We are not advocating that the prison conditions fall out of the equation entirely. They are simply part of the mix that you consider, just like you would consider the school environment or the hospital environment or a customs environment. With respect to being taken out to another building, so long as a reasonable person in his position would have felt free to go back, that's ultimately the dispositive inquiry. Sotomayor, what would make someone who's forced to go somewhere think that they're free to go back, absent being told? Right. Sotomayor, what would make any reasonable prisoner who can't move without an escort believe that they're always free to go back? Once they're forced to go from point A to point B. Right. There are three factors here, and I'll quibble just a little bit with the assumption that he was somehow forced to go. It's true they didn't ask him if he wanted to go, but there's also no contention that he resisted going and they made him go anyway. What he said is, I didn't know where we were going, I felt like I was in a safe environment, so I didn't object. And then once he got to the room, here are the three that I think are the most critical facts, that he was told right at the beginning, just tell us, we'll take you back to your cell when you want to do that. Second, when he got belligerent, they said, if you don't want to cooperate, you'll go back to your cell. And third, when he asked to go back to his cell, that request was honored within the context of the typical prison administration. And it's very possible that in his everyday prison life, he could be taken over next door for a medical exam, he could be taken over next door for a visitor if that was county policy. So there's nothing inherent about the walk into the next building that means, per se, he has to be Mirandized. Again, it's just one factor that should go into the mix, just like this Court has always done in Miranda cases. Unless the Court has any further questions, I'll reserve the balance of my time. Thank you, counsel. Thank you. No, no, wait. Sorry, I was eager. You're anxious, right? Ms. Anders. Thank you, Mr. Chief Justice, and may it please the Court. The Sixth Circuit has imposed a per se rule that whenever a prison inmate is isolated for questioning about conduct that occurred outside the prison, that inmate is in custody for Miranda purposes, regardless of the circumstances of the interrogation. But in the prison context, as in any other, the traditional Miranda custody test should apply, and the question should be whether, in light of all of the circumstances, a reasonable person in the suspect's position would have felt free to terminate the interview and leave. That is so for three reasons. The first is that the Court reaffirmed in Maryland v. Schatzer that restraints on a suspect's freedom of movement are a necessary but not sufficient condition for Miranda custody. In other words, a reasonable suspect whose freedom of movement is restrained may nonetheless feel that he is free to terminate the questioning. Second, there are, in fact, many situations in which a reasonable inmate isolated for questioning would feel free to terminate the interrogation, despite being subject to background prison restrictions. And third, the Sixth Circuit's per se rule here requires Miranda warnings to be given in situations in which the concerns about custodial interrogation that drove Miranda are simply not present. That holding impairs the important truth-seeking function of investigations by requiring the suppression of voluntary confessions made in noncustodial situations. Breyer. Suppose the policeman had said, I'm taking you away with me for 20 minutes, period. All right? Take some wine, put some in place, ask some questions for 20 minutes. All right? Does he have to Mirandize it? You have to look to the totality of the circumstances in that case. No, those are the totality. I just gave you the totality. In that situation, the inmate may not be in custody because Schatzer established that simply being in prison and subject to normal prison restrictions is not sufficient. No, no. I'm taking you to a special room, and in this special room I'm going to ask you questions for 20 minutes. You would look to? There is no other circumstance. That's it. Everything else is the same as here, except he added those words. Now what? I think he may not be in custody because he's only going to be there for 20 minutes. You look to what the reasonable inmate in that situation would feel. You would have thought he could leave after 20 minutes. You would look to what the reasonable inmate would feel, and in that situation you would look to his experience with the prison. You would look to the circumstances of the questioning, whether they are accusatorial, whether they are pleasant. Now outside, we walk outside and there's a policeman in the street, and he says to someone who's a suspect, come with me, I'm taking you to jail, I'm going to ask you questions for 20 minutes. Takes him to a barred room, can't get out for 20 minutes. Yes, Mirandizer? You may have to in that situation. Oh, what's the difference? The difference is that the person who is on the street, their baseline is that they are they have complete free will, they have freedom of movement. But when you look at the prison situation, the ultimate question is whether the reasonable inmate would feel free to terminate the questioning. And one situation you look to in determining that are the physical restraints on that person. And when you look at the restraints, you have to take into account the fact that the prisoner has a baseline, which is that he has some restrictions on his movement. That's what the Court said in Schatzer. And so when you look at the totality of the circumstances, you consider the restraints and the prisoner's baseline, but you also consider everything else that happens during the questioning. And so there could be many situations in which the questioning will go in a manner that tells the reasonable inmate that he's free to leave. So, for instance, the most clear example is when someone is actually told that they can leave. But there could be many other examples as well. Kagan. Kagan. Can I ask you a different sort of question, Ms. Anders, putting aside what the Sixth Circuit has read in the State court opinion? Do you read the State court, do you think the State court has fairly read, could the Sixth Circuit have fairly read it as establishing its own per se rule, which was the per se rule we rejected in Mathis, in other words, that the State supreme court required some kind of nexus between the prison custody and the interrogation? Anders, I think it's the State court opinions are somewhat unclear. There are some statements that could be taken to be inconsistent with Mathis, but immediately after those statements, the State court said, well, it's not enough alone for custody that someone is incarcerated on a conviction that's unrelated to their questioning. And we look to the fact that the inmate was told that he was free to leave and he actually felt free to leave. So I think the best reading of the State court's opinions is that they did go through the totality of the circumstances and they did conclude that a respondent reasonably felt that he was free to leave in this interview. But more importantly, I think the Sixth Circuit went much further than that and imposed a per se rule that says no matter what the questioners do, no matter what a prisoner is told, no matter how free he feels to leave, that person always has to be Mirandized. And that extends Miranda way beyond its initial concerns. Voluntary confessions, as the Court has recognized, are an unmitigated good. So any time someone confesses voluntarily in a noncustodial situation, the Sixth Circuit's rule applied to prisons would say that that person's confession has to be suppressed, even though it was given in a situation that doesn't implicate Miranda's concerns at all. And I think the Sixth Circuit's rule really arose from two assumptions. One was that isolation alone is sufficient to create custody in all circumstances. And that can't be the case, because we know that an inmate can be told that he can leave, he can be given an initial choice before he comes along for questioning, he can be interrogated in isolation purely because he's waiting to be treated in an infirmary. There are any number of situations, I think, where an inmate could be isolated for questioning, but he would still feel free to leave. And going to Justice Sotomayor's question about whether someone in prison necessarily feels coerced, I think that the Court in Shatzer established that background restrictions incident to being incarcerated are not in themselves sufficient to create Miranda custody. So in other words, they don't create such a huge coercive impact that nobody would feel free to terminate questioning. So I think accepting the proposition that someone in prison is always coerced would lead to a per se rule that says no matter how non-accusatorial, no matter how non-coercive the situation is, that person would always be in custody. So what we're saying is that the Court in Shatzer established that background restrictions incident to being incarcerated are not in themselves sufficient to create Miranda custody. Sotomayor's question was about the children issues with custody issues. And I don't know that you've really answered Justice Breyer's question. Someone's picked off the street and told you have to go into this room, and questions are asked, wouldn't we assume that that person is in custody? I think in either situation you have to look to the totality of the circumstances. And so we know that restraints alone, the restraints of prison aren't enough alone. And so when you consider the restraints, when you consider the fact that a prisoner is told he has to go into a room, you would look not only to that fact, but you'd also look to everything that happens in the questioning. But then when you go back to consider the fact that the prisoner was told that he has to come to the room, you would look to whether it's a normal prison policy that prisoners always have to be escorted places. And so that would help the Court determine whether the person is in custody. Sotomayor, you didn't choose to go to that room. He was placed in that room. What makes him think that if his jailers are walking him somewhere that he's free to leave? Well, I think two points. One is that the fact that he is asked to — the fact that he's told he has to go to this room is not the only circumstance of the interrogation. So certainly what happens in the questioning can lead a reasonable prisoner to believe that he's free to go, even though he's been told he has to go to the questioning. So if he's told he can leave, if it becomes clear from experience, if there's a prison policy saying that inmates can always leave, if he sees that he can summon the guards, all of those circumstances have to be taken into account in addition to the fact that he was told initially that he has to go with the guard. And the second thing is that he has to go with the guards. But here he didn't — he didn't have that choice. That's right. He didn't have that initial choice. But once he got into the questioning, I think this case is a good example of what can happen where the inmate here was told that he could end the questioning. And so the ultimate question for Miranda custody is whether the reasonable person would feel free to terminate the interrogation. And so in considering all of the circumstances, one circumstance would be that the he was then told once he got there that he could end the questioning. And so there are other factors like that. Is it — is the time relevant that this was done? They took him away at 7 in the evening and kept him for 7 hours? I think that would be a relevant factor here, too, as would the fact that the door was partially open, that the questioning was not threatened by the military officers. Well, the door — that didn't do him any good, because he couldn't get back to his cell without being escorted there. That's correct. That is a — that's a background restraint of incarceration. And in looking at whether that particular restraint made the inmate feel that he couldn't terminate the questioning, you would look both to the fact that, as he himself said, it's common sense that inmates have to be escorted to and from places in the prison. And also, I wonder why you just agreed that the 7 hours would be a pertinent circumstance. It strikes me that that would be a pertinent circumstance on overall voluntariness, perhaps. But once you're told you can leave whenever you want, I don't see why it matters at all how long he's kept there. I think that's exactly right. That's not a relevant circumstance on the custody question. It is a circumstance within the totality of the circumstances here, but it — if any kind of effect that it had on making the inmate feel that he couldn't terminate the question was entirely offset by the fact that he was told that he could leave multiple times. Thank you. Roberts. Thank you, counsel. Now Ms. Jacobs. Mr. Chief Justice, and may it please the Court. I want to address the issue of whether someone is free to leave. Recently, there have been several cases, and Cervantes is one, and I can't remember whether it was Alvarado or J.D.B., where the courts have said that in a prison setting, the statement that you're free to leave has less significance than if you're in a — in the free world. So I would suggest that when you look at this, that that particular issue or that particular statement should not be given the same weight in prison as out. And one of the reasons I suggest is because if a prisoner is told he's free to leave and he's in custody, and we know he's in custody because he's in prison, he really, under these facts, does not have the capability of getting up and leaving. Scalia Well, it certainly doesn't mean he can leave the prison, right? Jacobs Right. Scalia That's clear. But isn't that the only difference? It certainly, at a minimum, means he can leave this interrogation. Jacobs Prisoners. Scalia But what could it possibly mean if it didn't mean you could leave this room where you're now being questioned? Jacobs Let me answer that question by pointing out that in, I think it's Georgeson and Cervantes, where there is a button, and the prisoner has the ability to go and press the button and call his own jailers. In this case, the prisoner had to rely on the sheriff's deputies that were interrogating in order to effectuate his freedom. And, in fact, he's testified that he said he wanted to — that I think he said that he didn't want to answer any questions or he wanted to leave. And we don't hear any more about it, about that. Why not? Because at that point, no one allowed him to leave because the officers hadn't gotten the answers they wanted. Alito What is the rule that you want us to adopt? Jacobs The rule I want you to adopt is the rule in Mathis. And it seems that it's already been adopted, but I think that based on what the — Alito So everybody in prison is in custody at all times. Jacobs Right. Alito If you want to question anybody in prison about anything, you have to give them a Miranda warning. Jacobs And I don't think that's what Mathis said. I think Mathis was very specific that a police officer coming from the outside to the inside to talk about a crime occurring on the outside must be given a Miranda warning. Alito What sense does that make? Why is one more in custody, depending on the subject that the police want to question the person? Jacobs And in certain circumstances, I agree with you that, in fact, this Court should hold that when the correction officers are investigating a crime within the prison, and they remove the prisoner and they isolate him, take him out of the general population, that this Court should then hold Mirandas applicable. But when it's voluntary, when it's not, then it's not applicable. Alito So whenever a prisoner is isolated and questioned about a crime, no matter where it occurs, a Miranda warning has to be given. Jacobs Yes. Alito About a possible crime. Jacobs Yes. I mean, there doesn't seem to me to be possible crimes. They always turn out to be crimes. Kagan Well, how is that consistent with the totality of the circumstances test that we've always insisted upon in Miranda cases? Jacobs Well, Miranda, not all the – there are bright-line rules attached to Miranda. So that Miranda itself is a bright-line rule. So to state a bright-line rule I don't think is outside the purview of Miranda – of Miranda law. And it's easier for the officers to apply, it's easier for the courts to apply, and there would be more consistency. But, Justice Alito, I want to make sure that you understand that I think if it's on the scene questioning about a crime occurring on prison, that I don't think you have to give Miranda rights. That if it's voluntary, if the officer – if the defendant comes up to an officer and starts chatting away and starts mentioning crimes, that's voluntary. And that's consistent with Miranda. I don't think you really have to break new ground. Alito So if a prisoner is stabbed in the yard and there are 50 prisoners in the yard at the time, and the prison guards want to question everybody to see what they saw, they all have to be given Miranda warnings? Jacobs Well, that's an interesting fact situation, because some of those people are just witnesses, and they're not necessarily suspects. And a guard might be able to say, well, the people that were in this narrow area, they're possible suspects. They're going to get caught. Kennedy No, no, no, no. That's not the way Miranda worked. Miranda suppresses a statement that is adverse to the person who was questioned. And the priest doesn't know when the adverse station is going to go. So you're running away from the hypothetical. Jacobs I'm sorry. I had thought that what Miranda also said is if it's a witness, and you know, you believe that it's a witness, and that you're not asking questions that are going to incriminate them, that then you don't have to give Miranda. Once the point becomes, thank you, once the point becomes incriminating, then you give the Miranda right. Alito If it's a witness in the outside world, the witness is unlikely to be in custody. Jacobs I understand, but I thought your hypothetical had to do with being stabbed in the yard. Alito It does. Jacobs Okay. Alito So all these people, in your view, are in custody, and they're all being asked questions that may incriminate them. Jacobs If they Alito And they don't have to be given Miranda warnings, unless they're suspects. Jacobs If they are removed from the general population, if they're taken by a corrections officer to a cell where they're going to be interrogated, they are isolated, it's incommunicado, they're being interrogated by officers, they know they're officers, that's a Miranda situation. Alito When will that not occur? In my hypothetical of the stabbing in the yard, you mean that you think the guards are going to say, okay, all you guys stay here. Now, we're all going to question each of you individually, with everybody else, the 49 other prisoners present. Jacobs I think at that point, they're going to put the people that were in the yard back in their cells, and then they're going to take them out. Alito And then they'll be isolated. Jacobs Yes. Alito So they all will get Miranda. Jacobs So they will get Miranda. Kagan You know, and I understand the Court's concern that you might lose, you might lose evidence, but Miranda is going to protect us from false confessions, which is even a greater cost to society than the, than having to give the Miranda rights. Kagan And where do you get this focus on isolation from? I mean, it's never mentioned in Mathis. You said let's go back to Mathis, but that's not a part of Mathis, is it? It's, well, I've got two answers for that. One, it's, it's the basis of Miranda, that when you isolate someone, when you talk to them incommunicado, that that's, there are compelling pressures that only Miranda rights will dispel, such as, and let me get, answer one other question, telling someone that they've got the freedom to leave is not a substitute for Miranda. But now let me go back to Mathis. In Mathis, the Court said he was in a cell. So I draw the inference that he was isolated, that he's in a cell, he's got agents with him, and that that's isolation. He's not in a prison library. Ginsburg I thought that there was no discussion of the in-custody point in Mathis. It was assumed that they were in custody, and the issue was whether he could be questioned about a crime other than the one for which he was being held. I read Mathis as to say that he was in custody for the, for the question of the crime. That these officers came in, they have him in a cell, it's a police-dominated atmosphere, and that they're questioning him about a crime that occurred outside the prison. To me, that's Miranda. Roberts. Well, Justice Ginsburg is quite right. That, that was not the issue in Mathis. The argument in Mathis was we're questioning him about something else, so we don't have to give him Miranda warnings. And that's the question that the Court decided. I don't think it had any discussion about whether – it was certainly not the argument of whether he was in custody or not. The argument was this is a different crime, so we don't have to give you Miranda, and the Court rejected that. So how does that clearly establish the law on which the Court relied in this case? In Mathis, because he was – I guess it was the lower court thought that because he was not in custody on the crime with which they were going to ask questions. Roberts. Right. That, therefore, you didn't have to give him Miranda. Right. But I think what the Supreme Court was implying is that it doesn't matter what you're in prison for, you're in custody at that point that you're in the cell with these officers. You know, where exactly in Mathis? It's only five pages long. Can you show me where you have that discussion about custody as opposed to a discussion about what crime is being discussed? What I'm saying is that it's implied by Mathis. Exactly. You can infer it from Mathis. Exactly. It's implied. Is that clearly established law? Yes. I think it is clearly established law. It does not break any new ground. For us to apply it does not break any new ground. I think Mathis is a very limited case. The holding applies to police officers only, not to corrections officers. And I think that it does stand for the principle that if you're in custody, they're talking to you about it. So you agree that this is not what you want to derive from Mathis is not part of the holding of Mathis? I think it's a rational – I think it's a rational extension. It's an extension. But that doesn't necessarily mean that it's new law. I thought you were going back to Miranda itself, which says, in custody or otherwise deprived of his freedom of action in any significant way. Yes. So – and I think you repeated the phrase from Miranda that what the court was aiming at was incommunicado interrogation of an individual in a police-dominated atmosphere. The question is whether the court has modified what Miranda said in that regard. Which court? This court or the Sixth Circuit? This court. This court, because this court now seems to assume that it must be in custody and not otherwise deprived of action, that being in custody is essential. I read that as still being the law, that there are the two clauses. One is you're under arrest, and the other is your freedom of movement is restricted, such that a reasonable person would think that you were not – that you were not free to leave. I'm sorry, Justice Ginsburg, have I answered your question? Yes, I think you have. I'm not sure you answered mine from before. How do you think that your argument, or the decision of the court below, was implicit in or an extension of Mathis? Mathis says you don't – you're not free of Miranda just because it's a different crime. How does that answer the issue before the Sixth Circuit in this case? I think that when the Sixth Circuit is analyzing the State court decision, they're looking at the State court decision, and that decision says if there's no nexus between what you're being questioned about and what you're in custody for, then you don't have to give Miranda. So I think the Sixth Circuit found that to be contrary to the language in Mathis. But I thought what we've been arguing about is not a nexus issue, but instead whether, in light of the circumstances or under an absolute rule, there's custody. I think we're arguing about two things. I think the court is going to have to decide two things, and one is whether the Sixth Circuit's decision about whether the State court's decision was contrary to clearly established law. I think that's one decision. And the other decision is whether there's going to be this per se rule about whether if you're – whether you're in custody or not and under what circumstances there might be a per se rule. And what is the clearly established law set forth in our cases that answers that latter question? Whether – if there's a per se rule, there is not a clearly established law. There could be under a rational extension issue, but it's a little more attenuated. But I don't think that I – that the Respondent would lose on that issue. He would still win because the Sixth Circuit's decision is not wrong. The State court's decision was contrary to the clearly established law of Mathis. Can I ask you this? Suppose you have this situation. Police officers go to a prison. The prisoner – a prisoner is brought to an interview room, and the police officers are there with the prisoner in the interview room. They say to him, we're investigating allegations that you committed child abuse. Now, you're free to leave if you want to, and we'll see that you go back to your cell right away. He says, no, no, I want to explain this. I welcome this opportunity to speak to you. Do they have to give him Miranda warnings? I think they do, because I think that telling him that he is free to go is not a substitute for Miranda. It does not protect the Fifth Amendment right. And I think we look to Dickerson, which said that even though section 3501 said that you had to inform defendants of certain rights, it didn't cover all of the Miranda rights. And they said you had to cover – it doesn't necessarily have to be in the same language, but you have to cover those rights. I think what the Petitioner wants you to adopt is a rule that says telling someone they're free to go is a substitute for Miranda, and it isn't. It does not protect the Fifth Amendment. Ginsburg's question is, is the person entitled to Miranda warnings? And the argument has been that they're not entitled to Miranda warnings unless you're in custody. They say you want to have a per se rule for in custody. That is, if you take him out of your cell and put him in another place under police guard and question. That's correct. They've taken him from his normal routine. They've exercised control over him. They've moved him to another location where I'm assuming from Justice Alito's hypothetical that he's isolated from the general prison population. And they're starting to tell him, they're going to question him about child sexual abuse charges. I don't see how you can't deal with certain amounts of law. Alito, but you don't have to talk to us. You're free to go. And he says immediately, no, no, there's a misunderstanding here. I want to explain this. I'm glad you came and asked me about this. I don't want to go back to my cell. And you say that's coercive. I think you're now describing him as being much nicer than I had assumed he was the first time around. If the officer is not being confrontational, I think maybe that's one thing that has to be considered. I would think that you have to give him Miranda rights. Let me just go over a few issues that I wanted to make sure got mentioned. The Sixth Circuit decision, I got kind of, I think, carried away in my brief. The Sixth Circuit decision very clearly rests on the contrary clause. On page 10a of the Petitioner's Appendix, they state what their reason they state what their decision is going to be, that is, this is contrary to clearly established Supreme Court law. Then they do four more pages to page 14a in which they talk about why the State court decision was contrary. And it's only after they say that, they give their reasoning, they state their rule, that they say, but if there's any doubt, then let's look at Schatzer, which was not clearly established law at the time of this case. Roberts Can I, since we're talking about the Sixth Circuit decision, what it says is, this is on page 10a, the central holding of Mathis is that a Miranda warning is required whenever an incarcerated individual is isolated from the general prison population and interrogated, i.e., questioned in a manner likely to lead to self-incrimination about conduct occurring outside of the prison. Is that correct? Description of Mathis? Yes. I thought Mathis rejected the argument that it depends on whether the crime is the one that you're in prison for or something else. I'm sorry. I thought that that was what you said at the end. I apologize. I think that this Sixth Circuit decision makes it very clear that they are talking about crimes occurring outside the prison, that they've drawn that kind of dichotomy. So the first part, Miranda warning is required whenever an incarcerated individual is isolated from the general prison population, okay, and interrogated, i.e., questioned in a manner, whatever. Now, does that address all of the issues? Is that where in Mathis is the discussion about whenever an incarcerated individual is isolated from the general prison population? I thought that it was between 10a, page 10a, and page 14a. No, no, we're in Mathis. Oh. This was the question that we talked about before, and what I'm saying is that I believe that it's that they're implying that and that we're inferring that, and that it might not be a clearly stated principle that it's from outside the prison, but that it certainly foreshadows that it's that that rule is foreshadowed, so it's not a new rule. Roberts If the argument were that Miranda is not required because this concerns a different crime than what you're in prison for here, I understand the idea that under AEDPA that Mathis is clearly established law. The issue here, however, as the Sixth Circuit put it, is a warning is required whenever an incarcerated individual is isolated from the general prison population, and I just don't see that anywhere in Mathis. I, again, say that this is what one infers from Mathis, that that's the general principle. And what you infer is the rule that incarceration constitutes custody. No. Custody is when the prisoner is isolated, incommunicado, outside the general prison population, and he's being asked questions by a law enforcement officer designed to incriminate him. I think it's the traditional Miranda definition. Kennedy But that is Shaster, and Shaster was careful to say we've never decided that issue. O'Connor I think what Schatzer was saying, and I know it's hard for me to tell you what Schatzer was saying since you decided Schatzer, but I think that Schatzer seems to be aimed at correction officials, that whether correction officials – I think Schatzer is saying we never decided the whole issue. And I think that Mathis decided Kennedy Well, it speaks in broader terms. It says we've never decided whether incarceration constitutes custody for Miranda purposes, and indeed, they've explicitly declined to address the issue. It talks about Bradley, which was definitely where the issue was. O'Connor I think that Shatzer was referring to the whole umbrella of people that would come into the prison, including people that would be in the prison and want to talk to prisoners. So I think Shatzer was talking about not just police officers, but correction officials. I think Mathis clears up police officers. You come in, you're going to talk about something else, you're going to interrogate Miranda. Shatzer finishes this line of cases by saying it applies to – it will apply to correction officials as long as you take the gentleman out of the general prison population and isolate him. Ms. Jacobs, wouldn't it be fair to say – it seems to me that Shatzer – excuse me – Mathis must have found that Mr. Mathis – the court in Mathis must have found that Mr. Mathis was in custody. That would be a fair inference for Mathis. Yes. But we have no idea why the court thought that Mr. Mathis was in custody. That wasn't an issue in the case. The court doesn't talk about any of the surrounding factual circumstances. There might have been a thousand things we don't know about that led everybody to assume that Mr. Mathis was in custody, not the particular things that the Sixth Circuit mentioned. I think that Mathis does mention factors that went into the decision about whether he was in custody. They talk about him being in a cell – not in the prison law library, you know, not in a conference room, not in a visitor's room – being in a cell with the officers and he's being interrogated. I think that they very clearly are saying – I think it establishes this principle that Mathis – that my case – that House v. Field applies. Isn't the best you can say not that Mathis found, but perhaps that Mathis apparently assumed that he was in custody, because there is no discussion of it? There's no discussion of the custody. I agree. Yes, they give you a factual recital, he was in his cell and all that. I just don't think – I don't doubt that they thought that Mathis was in custody, which is why they were talking about Morant to begin with. He's in a cell. But we don't know why they thought Mathis was in custody. It just wasn't an issue in the case. Everybody had assumed it. And it's not dicta, as far as I can tell. It becomes part of the clearly established law. It was important. Dicta is something that's said that's not necessarily to the holding. Right. We don't have anything that's said about it here. But I – my argument, Justice Roberts, is that saying that he's in a cell and that he's being questioned by officers, that that is – and it's being questioned about a crime, that that is custody and that from that there is a principle. I would just like to close by saying again that I would ask you to reject the Petitioner's proposition that saying someone is free to leave is a substitute for Miranda warnings, that my client was very clearly in custody, that in fact – and I think this is an interesting part of this case – in a sense, custody had been transferred. That he really was no longer in the custody of the jail, but that he had been – once he went through the J door, was turned over to the sheriff's deputies, and the other guards left, that custody had then been transferred. So I think he's clearly in custody, and I think that's one of the things that this Court must look for or include in a per se rule, whether – who is holding this man in custody. Further, the fact that he was told that he could leave is not significant on the facts of this case. The fact that the officers – and I think Justice Kennedy made this point – that the officers were yelling at him, they're the ones that have control of him. He does not have the control. The fact that he was missing his medication shows that he did not think that he had the power to change his situation. Ginsburg-Gilmore There's no indication that he told the officers that he needed medication. No, I agree that there isn't. But I think that this is one of the things that was plain on his mind, and although I understand that this is an objective test and not a subjective test, I think that that lends credibility to his testimony at the hearing. Hearing to the first – Sotomayor The Ohio court – or the – I'm sorry, the court below had its own – seemingly had its own absolute rule.  That breaks the chain of custody, whatever that might mean. Assuming – and the Sixth Circuit said, if you're removed from the prison and questioned, you absolutely must be given warnings. Is there a middle ground? And what would that middle ground be? And what would – how would that middle ground affect the outcome of this case? I don't believe that telling a prisoner that he's free to leave is a substitute for Miranda. I think you have to get back to what Miranda was trying to protect. It's trying to protect Fifth Amendment rights. And telling him he's free to leave does not do that. So that that's not enough, and that shouldn't be part of the equation, not a significant part of the equation. Hearing – Roberts Also, you mentioned several times, you were talking about Mathis, that, you know, they mentioned he was in a cell, right? I've just been skimming it quickly. I don't see where that's mentioned. Do you know offhand? No, I don't. But I really, really did read the case. And I've – And I'm sure that it's that he was in a cell. I did, too. And, well, I'll look at it again. I'm sure – Please. I'm sure it's there. All I see is noting that he was in prison serving a State sentence. But it doesn't – it should be talking about the officers, the agents in the cell with him. Okay. Let me – Just as a final comment, I just want to say Harrington v. Richter requires a finding before a Ritkin issue of an extreme malfunction in the justice system that certainly where a State court has decided a constitutional issue on a Supreme Court law and ignores Supreme Court law, that we really do have an extreme malfunction of the judicial system. This Court should affirm the decision of the Sixth Circuit and send Mr. Fields back to Lenawee County for a new trial. If there are no other questions, I'll cede the remainder of my time to the Court. Thank you, counsel. Mr. Bursch, you have six minutes remaining. I think the hypotheticals today demonstrate how quickly the logic of the Sixth Circuit's new per se rule falls apart when you test it with other facts. Even in the Sixth Circuit's view, you would already make exceptions to that new per se rule if it was in-prison conduct or if it was prison guards as opposed to outside guards. In response to the questioning today, Mr. Fields' counsel admits that there must be an exception if you have a button that you can press to get out, like in Mr. Ellison's situation, the First Circuit case that Justice Souter wrote. She admitted that if you're in a circle of proximity or not in a circle of proximity, that that would make a difference, no per se rule. That if the situation isn't confrontational, that you need to have an exception for that. Or if the prisoner initiates questioning. And you can imagine many other hypotheticals that would similarly create exceptions to what is supposedly a per se rule. And ultimately what this comes down to is Justice Alito's question. If he's under no pressure at all, the prisoner welcomes the questioning, and I would submit that a fair reading of the record here shows exactly that, that even then it would be required. And that is a particularly strange rule when what we're talking about is not a constitutional mandated protection, but a prophylaxis, something that's supposed to protect a constitutional right. And where the protection isn't necessary, nor should there be a per se rule. Counsel also concedes that there isn't anything in Mathis that clearly establishes the rule that the Sixth Circuit applied. Maybe it's an extension, maybe it's implied. I think it's difficult to find either one of those. So at a bare minimum, this requires reversal under the Edpert standard. I do want to emphasize that the Sixth Circuit's per se test does have societal costs. It impedes prison administration and it eliminates the potential for voluntary, truthful confessions that we all want. And finally, the test that we advocate for is not our own per se test, that simply saying you're free to leave is not the be-all, end-all, because it's possible that officers could say you're free to leave while doing something else non-verbally that indicates you're not free to leave. That's why a totality of the circumstances test makes the most sense. And we urge you to go past the Edpert question and actually rule on the merits, because we think that would be good guidance for the lower courts and for law enforcement officials. And the test that we would propose is that a Miranda warning is not required when a reasonable person in the prisoner's position would have felt free to go back to his cell in accord with ordinary, reasonable prison procedures. That's exactly what happened here. We respectfully request that you reverse. Unless there are any further questions, I'll cede my time. Roberts. Thank you, counsel. The case is submitted.